# IN THE
# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

_____

No. 08–1019

THOMAS SPRINGMAN, individually and on behalf of all others
  similarly situated,

*Plaintiff-Appellant,*

v.

AIG MARKETING, INC. and ILLINOIS NATIONAL INSURANCE CO.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Southern District of Illinois.
No. 07–737–GPM—**G. Patrick Murphy**, *Judge*.

_____

Argued April 4, 2008—Decided April 15, 2008[*]

_____

Before POSNER, ROVNER, and EVANS, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiff filed this class action
suit in an Illinois state court in July 2003 against AIG Claim Ser-
vices (AIGC), a company that processes insurance claims, as
well as against Illinois National Insurance Company, which is-
sues insurance policies; the policies give rise to claims for pay-

---

[*] This opinion is being released in typescript because of the deadline im-
posed by the Class Action Fairness Act. 28 U.S.C. § 1453(c)(2).

ment. The complaint charged the defendants with having violated Illinois fraud and consumer protection law by underpaying accident-insurance claims submitted by the plaintiff and the members of his class.

In December 2003, in response to an interrogatory served by the plaintiff, AIGC stated that it had not handled his insurance claim. But not until October of the next year did he serve an interrogatory asking who *had* handled it. AIGC and Illinois National responded the following month that the claim had been handled by an affiliate of AIGC called AIG Marketing (AIGM). Three years (less two months) later, and thus nearly four years after he had first been told that he had sued the wrong party, the plaintiff moved the court for leave to amend his complaint to add AIGM as a defendant and drop AIGC. The court granted the motion.

In the meantime, however, Congress had passed the Class Action Fairness Act, which allows certain types of class action suit filed in state court and governed by state law to be removed to federal district court despite the absence of complete diversity, 28 U.S.C. §§ 1331(d), 1453, provided the suit was "commenced" on or after the Act's effective date, which was February 18, 2005. Both the plaintiff and Illinois National are citizens of Illinois, though neither of the AIG companies is. AIGC therefore could not have removed the case to federal court because the suit against it was filed before the Act's effective date and thus at a time when complete diversity was required for removal of a diversity case. But AIGM was substituted for AIGC *after* that date. So, promptly after the amendment of the complaint (and incidentally before a class had been certified), AIGM removed the case to federal district court, which denied the plaintiff's motion to remand to state court, precipitating this appeal under 28 U.S.C. § 1453(c)(1). The question we have to answer is whether the substitution of AIGM for AIGC was the commencement of a suit against AIGM within

the meaning of the Class Action Fairness Act, thus enabling removal of the entire suit. 28 U.S.C. § 1453(b).

That the suit had been filed before the Act's effective date might seem to doom removal. But the plaintiff does not argue that; it bows to our case law, which rejects the position that nothing that happens after suit is filed can affect removal. E.g., *Phillips v. Ford Motor Co.*, 435 F.3d 785, 786–88 (7th Cir. 2006); *Knudsen v. Liberty Mutual Ins. Co.*, 411 F.3d 805, 806–07 (7th Cir. 2005). All but one of the other circuits to have addressed the question agree with us. *Smith v. Nationwide Property & Casualty Ins. Co.*, 505 F.3d 401, 405–06 (6th Cir. 2007); *Prime Care of Northeast Kansas, LLC v. Humana Ins. Co.*, 447 F.3d 1284, 1285–86 (10th Cir. 2006); *Braud v. Transport Service Co.*, 445 F.3d 801, 803-04 (5th Cir. 2006); *Plubell v. Merck & Co.*, 434 F.3d 1070, 1071–72 (8th Cir. 2006). The outlier is the Ninth Circuit. E.g., *McAtee v. Capital One, F.S.B.*, 479 F.3d 1143, 1145–48 (9th Cir. 2007).

The cases that allow removal under the Class Action Fairness Act on the basis of certain events that take place after the case was filed are consistent with federal removal doctrine; "an amendment to the pleadings that adds a claim under federal law (where only state claims had been framed before), or adds a new defendant, opens a new window of removal." *Knudsen v. Liberty Mutual Ins. Co., supra*, 411 F.3d at 807; see 28 U.S.C. § 1446(b). The Ninth Circuit, however, believes that a simpler approach, one that disregards post-filing developments, is warranted because all that is at stake in removal under the Class Action Fairness Act is whether the same case, governed by state law, will be litigated in a state court or in a federal court. But that is all that's at stake whenever a suit is removed to federal court on the basis of diversity. Nowhere does the Act state or suggest that removal pursuant to it is more limited than in the usual diversity case. On the contrary, the Act lengthened the time within which a normal diversity suit can be removed, 28 U.S.C. § 1453(b), as well as making a particular class of diversity

cases, namely class actions in which diversity is only partial, removable to federal court for the first time.

On the Ninth Circuit's view, a plaintiff can defeat removal by first filing a complaint that does not include a claim or a defendant that would trigger the Act's right of removal and later substituting a claim or defendant that would have triggered the right. Suppose that with the Act's effective date looming, the plaintiff had not completed even a minimal pre-complaint investigation. Under the Ninth Circuit's view, the plaintiff could sue Donald Duck for violating a Chicago noise ordinance and then at his leisure amend the complaint to substitute a proper claim against a proper defendant, and the new defendant would not be able to remove.

But even the cases that reject the Ninth Circuit's position forbid removal if the new claim or defendant (new in the sense of having been added after the effective date of the Class Action Fairness Act) "relates back" to the original claim or the original defendant. It would not do so in the Donald Duck case, although that would not faze the Ninth Circuit, which considers relation back important only when necessary to avoid a statute of limitations defense, since, if successful, the defense kills the plaintiff's claim rather than just forcing it to be litigated in a different court system. *McAtee v. Capital One, F.S.B.*, *supra*, 479 F.3d at 1147.

The majority view, because it makes relation back important, raises a threshold question: should state or federal law govern whether a claim or defendant relates back? The cases thus far have assumed that it is state law, e.g., *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750–51 (7th Cir. 2005); *Plubell v. Merck & Co.*, *supra*, 434 F.3d at 1071, but with little discussion of the issue, probably because its resolution rarely matters (it doesn't matter in this case, as we shall see). What may have influenced the assumption is that state law determines the date on which a diversity suit was commenced for purposes of de-

termining whether the statute of limitations has run. *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980). The statute of limitations, however, is a substantive defense, and its application depends on the length of time that elapsed between the date on which the plaintiff's claim accrued and the date on which he filed suit. If state law governs the statute of limitations defense, as it normally will in a diversity case, it makes sense to defer to the state law's determination of when a claim accrues and when a suit is commenced, for those are the dates that determine whether the suit is barred. But the validity of a state-law defense is not the issue when the district court is asked to decide in which court system, the federal or the state, the case shall be litigated. Suppose that in an effort to delay the effective date of the Class Action Fairness Act, a state court defined "relation back" so broadly that even the replacement of Donald Duck by AIGM would relate back to the date of the original complaint and therefore AIGM could not remove. That would defeat the Act's goal, and as the Act is silent on relation back, the interpretation that is consistent with that goal is permissible as well as preferable.

We need not choose between state and federal law (we are merely flagging the issue for possible consideration in the future) because Illinois's relation-back rule is identical to the federal rule. Both rules provide that a party may be changed if, within the deadline for service of the complaint on it, (1) the new party had received enough notice of the original suit that it would not be "prejudiced in maintaining a defense on the merits" if it were brought into the case belatedly, and (2) it "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against" it. 735 ILCS 5/2–616(d)(2); Fed. R. Civ. P. 15(c)(1)(C). The plaintiff argues that these conditions have been satisfied.

The first may have been, but not the second. The plaintiff learned by December 2003, or at the latest by November 2004, that he had sued the wrong party, yet he waited almost three years to substitute the right one. He offers no excuse for having waited so long to correct his mistake. Neither party can explain the delay.

No matter, says the plaintiff; the rule imposes no duty of diligence. Not in so many words; that is true. But we must have regard for context, and in particular we must ask why there is a relation-back doctrine in the first place. The primary reason is to provide relief from a defense based on the statute of limitations in cases in which the deadline imposed by it is too tight. Just as a statute of limitations fixes a deadline for suing, the Class Action Fairness Act fixes a deadline for bringing a suit that cannot be removed to federal court, and so the relation-back issues are the same, at least when as in this case the federal and state relation-back rules are the same.

The purpose of allowing relation back—to extend a deadline—allies the doctrine closely to equitable tolling, which permits a party to delay filing his suit beyond the expiration of the limitations period if he could not reasonably be expected to have done so sooner. E.g., *Fidelity National Title Ins. Co. v. Howard Savings Bank*, 436 F.3d 836, 839 (7th Cir. 2006); *Neverson v. Faquharson*, 366 F.3d 32, 39–40 (1st Cir. 2004). He might, for example, have known he had suffered a wrongful injury but have been unable to identify the injurer in time. E.g., *Singletary v. Continental Illinois National Bank & Trust Co.*, 9 F.3d 1236, 1241–42 (7th Cir. 1993). But to be given the benefit of the doctrine he must be diligent in seeking out that identity and must sue promptly once he has learned it. E.g, *Shropshear v. Corporation Counsel*, 275 F.3d 593, 595 (7th Cir. 2001); *Pacific Harbor Capital, Inc. v. Barnett Bank, N.A.*, 252 F.3d 1246, 1252 (11th Cir. 2001); *Johnson v. Nyack Hospital*, 86 F.3d 8, 12–13 (2d Cir. 1996).

It is the same here. The plaintiff thought he had been stiffed by whoever had handled his insurance claim, and we'll assume that he was unable even by the exercise of diligence to identify the handler correctly when he sued. The relation-back doctrine would give him the time he needed to find out whom he should have sued, and sue him, provided that the new defendant knew about the suit and was not prejudiced by the delay in naming him as a defendant. But it doesn't give the plaintiff forever. It is implicit that he must proceed diligently. Otherwise the doctrine would undercut the tolling rules.

We have in this case a situation in which for three years a plaintiff knows that he has sued the wrong party and knows who the right party to sue is—for the plaintiff does not suggest that he disbelieved AIGC when it told him that not it but its affiliate AIGM had handled his claim—yet he neither drops the wrong party from the case nor adds the right one as a defendant. Throughout this period the wrong party, though knowing it is the wrong party, must keep tabs on the case, may have to report it to insurance and securities regulators as a pending case, or must incur the expense of seeking a dismissal, while the right party wonders why it hasn't been sued and must make preparations for an eventual suit by lining up counsel and preserving evidence. Neither the named nor the mysteriously unnamed defendant may be able—without disproportionate expense—to prove that it is being prejudiced by the plaintiff's dereliction, yet the litigation process is being complicated and uncertainty engendered and all for no reason.

This analysis brings us back to the language of the relation-back rules. When there is protracted and inexplicable delay in changing defendants, the plaintiff can no longer argue, under either the Illinois or the federal rule, that the defendant "should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against th[at] party." When as in this case the plaintiff does not change

defendants for years after discovering the mistake, the not-yet-named defendant can no longer assume that "the action would have been brought against" him had it not been for the plaintiff's mistake. After years passed without being substituted as a defendant for AIGC, AIGM could reasonably assume that the plaintiff had a reason for wanting to persist in the suit against AIGC even though that company had not handled his claim. Maybe it had handled the claims of some members of the class, and class counsel was thinking of substituting one of those members for the named plaintiff and continuing with the suit against AIGC. Maybe the plaintiff had thought that because AIGC and AIGM are affiliated corporations it didn't matter which one he sued—that they could be treated as a unit.

What was AIGM to do? Petition the court to direct the plaintiff to sue it? Or should AIGC have told the plaintiff, please sue my affiliate?

Read literally, it is true, the relation-back provision in both the Illinois and the federal rule could be thought to authorize relation back whenever the later-named defendant should have known *within the service period* that had it not been for a mistake by the plaintiff he would have been sued, whatever he learned later. But that would be a misreading. It is apparent that the requirement that the party learn of the mistake before the service deadline has passed is a limitation on rather than an expansion of the relation-back doctrine. There can be relation back only if the defendant realized within the period in which he might have been sued that he should have been the one sued. If he didn't learn that until later, there is no relation back because he would assume after the service deadline passed that he was out of the woods—it would be too late for the plaintiff to add him as a defendant. When years passed without AIGM's being substituted for AIGC, whatever initial concerns AIGM might have had about being sued would have tended to dissipate. No longer could it be sure that the plaintiff had sued AIGC, rather

than it, by mistake. The plaintiff's tenacious retention of AIGC as a defendant suggested alternative hypotheses to mistake, such as that, as we suggested, class counsel intended to replace the plaintiff as the named plaintiff in the class action suit with another member of the class.

We note finally that even when the conditions for relation bank are satisfied, a request to allow the complaint to be amended is addressed to the judge's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666–67 (7th Cir. 2007); *Mundt v. Ragnar Benson, Inc.*, 335 N.E.2d 10, 16 (Ill. 1975); *Brandon v. Bonell*, 858 N.E.2d 465, 484–85 (Ill. App. 2006); *Grove v. Carle Foundation Hospital*, 846 N.E.2d 153, 158 (Ill. App. 2006). (Federal, but not Illinois, law permits a first amendment to be made as a matter of right before the answer or a dispositive motion is filed. Compare Fed. R. Civ. P. 15(a) with 735 ILCS 5/2-616(a). That is not the nature of the amendment at issue.) It is difficult to regard the state court's permitting the plaintiff to amend his complaint to change defendants as anything other than an abuse of discretion. The plaintiff's delay in seeking leave to amend was gross, unjustified, and not even explained; the maintenance for years of a suit against a party known by the plaintiff to be the wrong one to sue was an abuse of legal process; and the amendment changed not only the defendants but the claimants, since the insurance claims of some of the class members were processed by AIGC and of others by AIGM. If as seems likely AIGM would not have known how substituting it in as a defendant would alter the composition of the class, that is an independent ground for denying relation back. *Smith v. Nationwide Property & Casualty Ins. Co., supra*, 505 F.3d at 406 n. 2.

Obviously we cannot reverse the state judge's grant of leave to amend the complaint. But the arbitrariness of that action supports an interpretation of the Class Action Fairness Act under which the suit against AIGM is deemed to have been

commenced when it was added as a defendant, and not years earlier when AIGC was sued.

The order of the district denying the petition to remand this suit to the state court is

AFFIRMED.