M. SMITH, Circuit Judge,
concurring in part and dissenting in part:
I concur with Parts III and IV of the majority opinion that discuss justiciability and jurisdiction. I part ways with the majority, however, where it holds that Shell may impute the actions of other independent Greenpeace entities to Greenpeace USA in order to meet Shell’s burden of proof.[1] Because I cannot support the imposition of legal sanctions on Greenpeace USA based, in significant part, on the conduct of others that Greenpeace USA does not control, I respectfully dissent.
I.
The majority claims that Greenpeace USA was properly enjoined because the “evidence showed that stopping Shell and other oil companies from drilling in the Arctic is more likely than not one of the overall priority strategies of Greenpeace Worldwide, as well as of Greenpeace USA.” (Maj. Op. at 1289-90) (quoting Shell Offshore Inc. v. Greenpeace, Inc., 864 *1293 F.Supp.2d 839, 848 (D.Alaska 2012)). Of course, Greenpeace USA does not dispute that it seeks to stop Shell from drilling in the Arctic. Rather, Greenpeace USA disputes that Shell has presented sufficient evidence to show that Greenpeace USA will likely use illegal methods to achieve its goal. Because Greenpeace USA is unquestionably entitled to lawfully protest Shell’s drilling activities, the real issue in this case is whether Shell has sufficiently proved that Greenpeace USA is likely to take “imminent” unlawful action unless it is enjoined. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
Relying heavily on evidence of previous unlawful encounters between “Greenpeace activists” and Shell, such as the boarding of the Noble Discoverer in New Zealand and the boarding of the Nórdica and Fennica in Finland, the majority concludes that Shell has met its burden. The majority’s reliance on these acts is troubling, however, because even the majority admits that Greenpeace USA played no part in these events.[2] In order to sufficiently link these activities to Greenpeace USA, the majority advances two theories, both of which are ill-conceived. First, the majority claims that “Shell does not need to show past injury by Greenpeace USA” to be entitled to legal relief. (Maj. Op. at 1288)(emphasis added). Alternatively, the majority claims that because Greenpeace USA reported on the unlawful actions of other Greenpeace entities on its website, and made reference to the members of such Greenpeace groups as “our activists,” Greenpeace USA “endorsed” those actions, thereby permitting us to hold Greenpeace USA responsible for the underlying conduct in this litigation. (Maj. Op. 1285-86, 1291). For the reasons discussed below, I disagree with both propositions.
A. The Separate Legal Status of Greenpeace USA Is Relevant to This Appeal
It is axiomatic that a plaintiff must sue the proper party in order to obtain relief. See, e.g., Krupski v. Costa Crociere S.p.A., - U.S. -, 130 S.Ct. 2485, 2494, 177 L.Ed.2d 48 (2010) (“[Mjaking a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party’s identity.”).[3] It is similarly well recognized that a person (or corporation) can be held legally responsible only for his own actions, absent extraordinary circumstances. See, e.g., N.A.A.C.P. v. Claiborne Hardware Co., 458 U.S. 886, 920, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) (“Civil liability may not be imposed merely because an individual belonged to a group, some members of which committed acts of violence.”); First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba (Bancec), 462 U.S. 611, 625, 103 S.Ct. 2591, 77 L.Ed.2d 46 (1983) (“Separate legal personality has been described as an almost indispensable aspect of the public corporation.”). Certainly Shell understands these principles well — its own corporate disclosure statement takes up nearly a full page of its *1294 answering brief,[4] listing all of the subsidiaries and entities Shell admittedly relies on to limit its own liability.[5] Yet when it comes to Greenpeace USA, what is sauce for the goose is apparently not sauce for the gander.
The majority claims that Greenpeace USA can be held to account for the actions of legally separate Greenpeace entities. But well-established law, as well as basic fairness, dictates otherwise. As the Supreme Court noted in a similar case:
The taint of violence colored the conduct of some petitioners. They, of course, may be held liable for the consequences of their violent deeds. The burden of demonstrating that it colored the entire collective effort, however, is not satisfied by evidence that violence occurred ... Such a characterization must be supported by findings that adequately disclose the evidentiary basis for concluding that specific parties agreed to use unlawful means[.]
Claiborne Hardware Co., 458 U.S. at 938, 102 S.Ct. 3409 (emphasis added).
Applying these principles to the case before us, Greenpeace USA should only be legally sanctioned for the actions of other independent entities on a sufficient showing that Greenpeace USA significantly coordinated with, encouraged, or controlled the actions of those groups. See, e.g., id. at 932-34, 102 S.Ct. 3409 (the fact that certain activists engaged in unlawful conduct cannot be attributed to other protest organizers unless it could be shown that the latter had personally committed or authorized the unlawful acts); Bancec, 462 U.S. at 626-29, 103 S.Ct. 2591 (explaining that “limited liability is the rule, not the exception,” and thus one corporate entity may only be held liable for the actions of another “where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created.”).
The record here, however, does not demonstrate such pervasive control. Instead, the record indicates that Greenpeace USA functions as an operationally independent member of Stichting Greenpeace Council (a.k.a., Greenpeace International), the Amsterdam-based “parent” entity that licenses the Greenpeace name to groups like Greenpeace USA. Together with the other fifteen voting members of Greenpeace International, Greenpeace USA helps set Greenpeace’s worldwide campaign priorities, such as preventing oil drilling in the Arctic, or logging in the Amazon. But when it comes to the methods and tactics used to advance those priorities, the record makes clear that each Greenpeace licensee is autonomous, and free to choose the tactics most likely to resonate with its local constituency. Thus, while Greenpeace New Zealand and Greenpeace Nordic may seek to advance *1295 the global “stop Shell” campaign through the unlawful boarding of Shell vessels, Greenpeace USA may choose more benign tactics, like the letter-writing campaign Greenpeace USA admits it coordinated through its website.
Understood in its correct factual context, it is legally improper to impute the independent tactical choices of other Greenpeace licensees to Greenpeace USA in this litigation. Yet under the majority’s newly announced rule, Greenpeace USA’s separate legal status has no bearing on our decision. Of course, as previously noted, courts have consistently held just the opposite, and found that a party’s individual culpability is a key factor in fashioning an appropriate legal remedy. See, e.g., Claiborne Hardware Co., 458 U.S. at 932-34, 102 S.Ct. 3409.[6] The majority does not adequately explain why this case should be decided any differently, and absent such justification, I cannot endorse its permissive and pernicious new rule.[7] Without sufficient proof of what Greenpeace USA itself has done to threaten Shell’s Arctic drilling operations, I would not grant a preliminary injunction.
B. Mere Endorsement of Criminal Conduct Cannot Support an Injunction
In addition to improperly relying on the direct evidence of illegal acts committed by non-party Greenpeace entities, the majority also relies on Greenpeace USA’s “endorsement” of such acts to support its conclusion that Greenpeace USA was properly enjoined here. Put simply, the majority implies that Greenpeace USA can be enjoined, at least in part, because Greenpeace USA wrote favorably about the unlawful activities of groups like Greenpeace New Zealand, and described those groups’ activists as “our activists.” Again, I disagree.
My first ground for disagreement is factual. Although Shell tries its best to paint Greenpeace USA’s statements as imminent threats, they are clearly no such thing. That Greenpeace USA officially referred to those members of Greenpeace New Zealand who unlawfully boarded the Noble Discoverer as “our brave activists,” and described the incident as “only the first chapter in what will undoubtedly be an epic battle,” is unremarkable. These statements say nothing about Greenpeace USA’s own planned involvement in any “epic battle,” let alone shed light on Greenpeace USA’s contemplated “battle” tactics. Rather, Greenpeace USA’s statements are fully consistent with its claim that it plans to protest Shell’s Arctic drilling using only legal methods.[8]
More importantly, however, the majority’s “endorsement” test is legally ill-advised, because it is likely to have an *1296 unintended chilling effect on otherwise protected speech. No party to these proceedings claims that Greenpeace USA’s blog posts fall outside the protections of the First Amendment. See Brandenburg v. Ohio, 395 U.S. 444, 447-48, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) (“advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action” is protected under the Constitution); Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists, 290 F.3d 1058, 1072 (9th Cir.2002) (en banc) (“If ACLA had merely endorsed or encouraged the violent actions of others, its speech would be protected.”) (emphasis added). Praising civil disobedience and promising further protest in no way rises to the level of incitement or a true threat. See id. at 1089 (Kozinski, J. dissenting) (“The difference between a true threat and protected expression is this: A true threat warns of violence or other harm that the speaker controls.”) (emphasis added). Yet by premising the grant of a preliminai'y injunction, at least in part, on Greenpeace USA’s clearly protected political speech, the majority indirectly penalizes Greenpeace USA for behavior that cannot be punished directly. Chief Judge Kozinski, now in the majority, stated the issue well in dissent: “Like Claiborne Hardware, this case involves a concerted effort by a variety of groups and individuals in pursuit of a common political cause. Some of the activities were lawful, others were not. In both cases, there was evidence that the various players communicated with each other and, at times, engaged in concerted action. The Supreme Court, however, held that mere association with groups or individuals who pursue unlawful conduct is an insufficient basis for the imposition of liability, unless it is shown that the defendants actually participated in or authorized the illegal conduct.” Id. at 1095.
Because the record here does not show that Greenpeace USA actually participated in or authorized much of the illegal conduct relied on by the majority, I respectfully dissent.

. As discussed more fully below, Greenpeace USA is one of sixteen independent voting members of Stichting Greenpeace Council (a.k.a., Greenpeace International), and is the only Greenpeace entity that is a party to this case.

. The record is clear that the Noble Discoverer was boarded by members of Greenpeace New Zealand, while the Nórdica and Fennica were boarded by members of Greenpeace Nordic.

. Leonard v. Parry, 219 F.3d 25, 29 (1st Cir.2000) ("[E]ven the most liberal interpretation of ‘mistake’ cannot include a deliberate decision not to sue a party whose identity plaintiff knew from the outset.”) (quotation omitted); Springman v. AIG Mktg., Inc., 523 F.3d 685, 690 (7th Cir.2008) ("the maintenance for years of a suit against a party known by the plaintiff to be the wrong one to sue was an abuse of legal process”).

. Appellee Shell Offshore Inc. is a wholly owned subsidiary of SOI Finance Inc., which is a wholly owned subsidiary of Shell U.S. E & P Investments LLC, which is a wholly owned subsidiary of Shell Oil Company, which, in turn, is a wholly owned subsidiary of Shell Petroleum Inc., which is a wholly owned subsidiary of Shell Petroleum N.V., which is a wholly owned subsidiary of Royal Dutch Shell pic. (Appellee’s Corporate Disclosure Statement). Shell Offshore Inc. is itself the parent corporation of Enterprise Oil North America Inc., which in turn is the parent company of Shell Gulf of Mexico Inc., the other Shell appellee in this case. Id.

. Consider the following exchange with Shell’s counsel at oral argument:
The Court: I am very well aware that Shell has thousands of corporate and other entities and I have never heard a Shell representative basically say these are all worthless; we should treat them all as just one entity.
Mr. Leppo: And I’m not saying that your honor ... I will never make that argument.

. Scales v. United States, 367 U.S. 203, 228-30, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); Schware v. Bd. of Bar Exam. of State of N.M., 353 U.S. 232, 244, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); Anderson v. Abbott, 321 U.S. 349, 357-62, 64 S.Ct. 531, 88 L.Ed. 793 (1944); Louisiana-Pacific Corp. v. ASARCO, Inc., 5 F.3d 431, 433-34 (9th Cir.1993).

. Contrary to the majority's assertion in its own footnote seven, there is no justification for distinguishing between types of requested relief when considering whether a plaintiff has adequately sued the proper party. To obtain any legal relief, a plaintiff must sue the correct entity. Any other rule is simply nonsensical and contrary to long-established precedent. See, e.g., Bancec, 462 U.S. at 626-29, 103 S.Ct. 2591

.Contrary to what the district court found, Greenpeace USA denied that it intended to illegally interfere with Shell’s activities. Greenpeace USA’s sworn denial in its verified answer was all that was necessary, since Shell has the burden of proof in this case. See Thalheimer v. City of San Diego, 645 F.3d 1109, 1116 (9th Cir.2011).