**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHELL OFFSHORE, INC., a Delaware corporation; SHELL GULF OF MEXICO, INC., a Delaware corporation, | No. 12-35332 |
| *Plaintiffs-Appellees*, | D.C. No. 3:12-cv-00042-SLG |
| v. | |
| GREENPEACE, INC., a California corporation, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, District Judge, Presiding

Argued and Submitted
October 9, 2012—Seattle, Washington

Filed March 12, 2013

Before: Alex Kozinski, Chief Judge, A. Wallace Tashima
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Tashima;
Partial Concurrence and Partial Dissent by
Judge Milan D. Smith, Jr.

# SUMMARY[*]

## Maritime Law / Preliminary Injunction

The panel affirmed the district court's preliminary injunction, which prohibited Greenpeace USA from coming within a specified distance of vessels involved in an oil company's exploration of its Arctic Outer Continental Shelf leases and from committing various unlawful and tortious acts against those vessels as they journeyed from shore-based facilities in the United States, through United States territorial waters, and into the waters of the U.S. Exclusive Economic Zone, where rigs attach to the Arctic seabed and conduct exploration activities.

The panel held that Shell Offshore, Inc., and Shell Gulf of Mexico, Inc., had standing to seek injunctive relief and that the dispute was ripe. The panel concluded that even though the preliminary injunction, limited to a single Arctic Ocean open water season, had expired, the case was not moot because it fell within the exception for disputes capable of repetition, yet evading review.

Greenpeace USA did not dispute that, with regard to injunctive relief in the United States and its territorial waters, the district court had diversity jurisdiction, nor that the Outer Continental Shelf Lands Act gave the court jurisdiction to grant injunctive relief while Shell's vessels were attached to the seabed. The panel did not decide whether, under 28 U.S.C. § 1333, the district court also had admiralty

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

jurisdiction to enjoin conduct relating to vessels transiting through the U.S. Exclusive Economic Zone. Instead, the panel held that the district court could exercise supplemental jurisdiction over the entire case because a common nucleus of operative facts underlay Shell's claim for injunctive relief.

The panel affirmed the district court's conclusion that Greenpeace USA was the proper entity to enjoin. The panel also affirmed the district court's conclusions that Shell had shown (1) a likelihood of success on the merits of its claim that Greenpeace USA would commit tortious or illegal acts against the Arctic drilling operation absent an injunction and (2) that the resulting harm would be irreparable. In addition, the district court did not abuse its discretion in concluding that the balance of the equities and the public interest favored Shell.

Judge M. Smith concurred with Parts III and IV of the majority opinion addressing justiciability and jurisdiction. He dissented from the majority's holding that Shell could impute the illegal actions of other independent Greenpeace entities to Greenpeace USA in order to meet Shell's burden of proof for preliminary injunctive relief.

---

## COUNSEL

Rebecca J. Hozubin and Michael A. Moberly (argued), Law Office of Hozubin & Moberly, Anchorage, Alaska, for Defendant-Appellant.

Jeffrey W. Leppo (argued), Ryan P. Steen and Jason T. Morgan, Stoel Rives, LLP Seattle, Washington; James Torgerson, Stoel Rives LLP, Anchorage, Alaska, for Plaintiffs-Appellees.

**OPINION**

TASHIMA, Circuit Judge:

Shell Offshore, Inc. and Shell Gulf of Mexico, Inc. (together, "Shell") hold multi-year oil and gas leases in the Outer Continental Shelf ("OCS"), located in the Arctic Ocean off the coast of Alaska. Greenpeace, Inc. ("Greenpeace USA") has publicly undertaken a campaign to "stop Shell" from drilling in the Arctic. The district court granted Shell's motion for a preliminary injunction, which prohibited Greenpeace USA from coming within a specified distance of vessels involved in Shell's Arctic OCS exploration and from committing various unlawful and tortious acts against those vessels. Greenpeace USA argues that the action is not justiciable, that the district court lacked subject matter jurisdiction to issue its order, and that the court erred in its application of *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), to the merits of Shell's motion. We conclude that the action presents a justiciable case or controversy, that the district court had jurisdiction to issue its order, and that it did not abuse its discretion in doing so. Accordingly, we affirm.

# I.  BACKGROUND

## A.  Greenpeace Efforts to Stop Arctic Drilling

Shell has presented evidence that Greenpeace USA and Greenpeace entities around the world are publicly committed to stopping Shell's exploration of its Arctic OCS leases. Indeed, the websites of virtually all Greenpeace organizations, including Greenpeace USA, prominently feature a campaign to "stop Shell."

But "stop Shell" is not merely a campaign of words and images.  Greenpeace USA also uses so-called "direct actions" to achieve its goals, and its general counsel has conceded that direct action can include illegal activity.  There is evidence that Greenpeace USA and its counterparts around the globe are united in the goal of stopping Shell.  When Greenpeace activists forcibly boarded an oil rig off the coast of Greenland in 2010 and used their bodies to impede a drilling operation, Greenpeace USA's executive director described their conduct as "bold non-violent direct action" by "our activists." Greenpeace USA similarly endorsed the forcible boarding of a Shell vessel by Greenpeace New Zealand activists in February 2012, again referring to them as "our brave activists."

The record before the district court contained evidence that Greenpeace activists used illegal "direct action" to interfere with legal oil drilling activities on many such occasions.  Several incidents involved Shell vessels that were subsequently named in the district court's preliminary injunction order and used in Shell's 2012 Arctic OCS drilling operation.  *See Shell Offshore Inc. v. Greenpeace, Inc.*,

864 F. Supp. 2d 839, 854–55 (D. Alaska 2012). These incidents were as follows:

## 1. Direct Action Against Shell's *Harvey Explorer* Vessel

Greenpeace USA activists unlawfully boarded the *Harvey Explorer*, a vessel that Shell contracted to use in its Arctic OCS operation, in May 2010. The vessel was in the Gulf of Mexico (and scheduled to depart for Alaska) when activists boarded it, unfurled banners, and painted slogans on its walls.[1]

## 2. Direct Action Against Cairn Energy's Arctic Drilling Operation

Shell adduced evidence that Greenpeace used direct action against another energy company, Cairn Energy, in order to prevent Cairn from conducting OCS oil and gas exploration activities in the Arctic Ocean. Greenpeace USA's executive director described the first such action in Greenpeace International's 2010 Annual Report:

> In August, our activists evaded Danish navy commanders and scaled Cairn's exploration rig off Greenland, halting the operation – we

---

[1] Greenpeace USA has admitted that its activists boarded the *Harvey Explorer*, but now argues – in passing – that the incident is "jurisdictionally irrelevant to the current case," presumably because it took place in the Gulf of Mexico rather than the Arctic Ocean.

> knew that, due to very tight deadlines, even a minor delay could have a major effect; Cairn didn't find oil in 2010.

Dkt. 56-19 (Ex. 1015 at 0005).

In 2011, Greenpeace activists again boarded a Cairn vessel off the coast of Greenland. Approximately twenty such activists were arrested after climbing the rig, attaching themselves under the rig in a "survival pod," and hanging a few meters from the drill bit. A news report posted on the Greenpeace Africa website quoted one of the "climbers" as saying:

> There's no way Cairn can drill for oil while we're hanging next to their drill-bit, and it's going to be extremely difficult for them to remove our survival pod. To drill oil here would be dangerous insanity. We have to stop the Arctic oil rush.

Dkt. 56-25 (Ex. 1020 at 0001).

### 3. Direct Action Against Shell's *Noble Discoverer* Vessel

In February 2012, six Greenpeace New Zealand activists illegally boarded and occupied the Shell drillship *Noble Discoverer* while it stopped at New Zealand on its way to the Arctic Ocean. Activists equipped with survival gear scaled the 53-meter drilling tower, secured themselves to the rig, and unfurled "stop Shell" banners. They were arrested by New Zealand authorities four days later. Greenpeace USA, in its blog, endorsed the activists' conduct and described them as

"our brave activists." Dkt. 11-14 at 2. Its website described the incident as "only the first chapter in what will undoubtedly be an epic battle."

### 4. Direct Action Against Shell's *Nordica* and *Fennica* Vessels

In March 2012, Greenpeace activists boarded and occupied the *Nordica* and *Fennica*, two of Shell's "icebreaker" support vessels, while in port in Finland. Again in May 2012, Greenpeace activists twice boarded and occupied the *Nordica* while it transited through Swedish and Danish waters. Activists chained themselves to the vessel, dropped weights and other objects in the water to obstruct the vessel's propulsion, and created a human blockade using divers.

## B. Preliminary Injunction

Shell was scheduled to begin federally-authorized exploration of its Arctic OCS leases in 2012. In the months leading up to the exploration, Shell first obtained a temporary restraining order and then a preliminary injunction that barred Greenpeace USA from coming within specified distances of named Shell vessels[2] involved in the OCS exploration. *See Shell Offshore Inc. v. Geenpeace, Inc*., 2012 WL 1931537, at *16 (D. Alaska May 29, 2012) (amended order); *Shell Offshore*, 864 F. Supp. 2d at 855 (original order). The injunction also prevented Greenpeace USA from committing various tortious and illegal acts against those vessels and their

---

[2] Including within 1000 meters of the *Noble Discoverer* and the *Kulluk*.

occupants.[3]  By its own terms, the injunction expired on October 31, 2012 – the last day of the 2012 Arctic Ocean open water season during which Shell would explore its OCS leases.

Greenpeace USA challenges the injunction on several grounds:  (1) that the dispute does not present a justiciable case or controversy; (2) that the district court lacked subject matter jurisdiction; (3) that Shell has sued the wrong Greenpeace entity; and (4) that the district court based its ruling on legal standards and factual findings that were erroneous.  We conclude that each of these contentions lacks merit.

## II.  STANDARD OF REVIEW

Our standard of review for preliminary injunction appeals is by now familiar:

---

[3] The injunction barred Greenpeace from:

    a.    Breaking into or trespassing on [specified] vessels;

    b.    Tortiously or illegally interfering with the operation, movement or progress of [specified] vessels;

    c.    Barricading, blocking, or preventing access to or egress from [specified] vessels;

    d.    Tortiously or illegally endangering or threatening any employee, contractor or visitor of Shell or any of its affiliates who is present on, or as they enter or exit, [specified] vessels.

*Shell Offshore*, 864 F. Supp. 2d at 855.

> We review the district court's decision to
> grant or deny a preliminary injunction for
> abuse of discretion. Our review is limited and
> deferential. The district court's interpretation
> of the underlying legal principles, however, is
> subject to de novo review and a district court
> abuses its discretion when it makes an error of
> law.

*Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d
914, 918 (9th Cir. 2003) (en banc) (internal citations
omitted); *see also United States v. Hinkson*, 585 F.3d 1247,
1251 (9th Cir. 2009) (en banc) (articulating our two-part test
for abuse of discretion). We review findings of fact for clear
error. *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115
(9th Cir. 2011). "Under this standard, [a]s long as the district
court got the law right, it will not be reversed simply because
the appellate court would have arrived at a different result if
it had applied the law to the facts of the case." *Id.* (alteration
in original) (internal quotation marks omitted).

We review standing, ripeness, and mootness de novo. *See
Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012);
*Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir.
2009). "[W]e have an independent obligation to consider
mootness *sua sponte*." *NASD Dispute Resolution, Inc. v.
Judicial Council*, 488 F.3d 1065, 1068 (9th Cir. 2007)
(internal quotation marks omitted).

## III. JUSTICIABILITY

### A. Standing and Ripeness

Greenpeace USA's justiciability arguments are hazy, but appear to challenge both Shell's standing to sue and the ripeness of the dispute. "Article III standing requires an injury that is actual or imminent, not conjectural or hypothetical. In the context of injunctive relief, the plaintiff must demonstrate a real or immediate threat of irreparable injury." *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1100 (9th Cir. 2000) (internal quotation marks omitted). The same facts by which Shell has shown (1) a likelihood of success on the merits of its claim that Greenpeace USA would commit tortious or illegal acts against Shell's Arctic drilling operation in the absence of an injunction, and (2) that the resulting harm would be irreparable, necessarily establish that Shell has standing to seek injunctive relief. *See infra*, Parts V.B.1–2.

The dispute is also ripe because the facts are sufficiently developed and the nature of the dispute warrants prompt adjudication. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967) (explaining that the ripeness inquiry considers "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration"). Shell presented undisputed evidence that it is only authorized to explore these leases during the narrow open water season of July through October, and the district court concluded that it faced irreparable harm absent injunctive relief; to withhold decision in such a context would work a serious hardship upon Shell.

## B.  Mootness

It is undisputed that the preliminary injunction expired by its own terms on October 31, 2012 – after oral argument, but before this Court could render a decision.  So we must determine whether the action is moot.[4]  We conclude that it falls within the mootness exception for disputes "capable of repetition, yet evading review." *NAACP, W. Region v. City of Richmond*, 743 F.2d 1346, 1353 (9th Cir. 1984) (internal quotation marks omitted).

In order for the exception to apply, "(1) the duration of the challenged action or injury must be too short to be fully litigated; and (2) there must be a reasonable likelihood that the same party will be subject to the action again." *Id.*  As we recently explained, "[c]ases that qualify under prong one present controversies of inherently limited duration." *Doe No. 1*, 697 F.3d at 1240.  An action is "fully litigated" if it is reviewed by this Court and the Supreme Court. *See Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 786–87 (9th Cir. 2012).

A preliminary injunction limited to a single Arctic Ocean open water season, that bars Greenpeace USA from physically interfering with Shell's Arctic drilling operation, will never last long enough to allow full litigation because of the inherently limited duration of the open water season and, correspondingly, the drilling season.  Under its multi-year

---

[4] On November 1, 2012, Shell filed a motion to dismiss the appeal for mootness, on the grounds that the preliminary injunction had expired by its own terms.  Greenpeace argued in response that the case fell within a mootness exception.  Our ruling today that the case is not moot operates as a denial of Shell's motion to dismiss.

lease, Shell is legally authorized to drill only between July 10 and October 31 of each year. The now-expired preliminary injunction against Greenpeace USA was by its own terms limited to a total duration of less than seven months, encompassing the drilling season, plus the time necessary for Shell vessels to transit to the Arctic Ocean.[5] Orders of such inherently limited duration will almost always evade full review. *See, e.g.*, *United States v. Oregon*, 657 F.2d 1009, 1012 (9th Cir. 1985) (holding that American Indian tribe's appeal from an injunctive order banning salmon fishing in 1980 was not moot even though the spring salmon run of 1980 was over and the order was limited to that run).

Turning to the second prong, we have every reason to believe that the underlying wrong will recur. Shell has drilling rights under a multi-year lease, and there is no reason to believe that Greenpeace USA's "stop Shell" campaign was limited to the 2012 drilling season. We conclude that there is at minimum a "reasonable expectation that the same complaining party [will] be subject to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

## IV. JURISDICTION

The preliminary injunction at issue protects specific Shell vessels as they journey from shore-based facilities in the United States, through United States territorial waters, and into the waters of the U.S. Exclusive Economic Zone

---

[5] The preliminary injunction ran from March 28, 2012, through October 31, 2012. *See Shell Offshore*, 864 F. Supp. 2d at 855. The district court did not explain why it so temporally limited the injunction. It appears, however, from its moving papers, that Shell sought a preliminary injunction only through the 2012 exploration drilling season.

("EEZ") where rigs attach to the Arctic seabed and conduct exploration activities. Greenpeace USA does not challenge the district court's conclusion that, with regard to injunctive relief in the United States and its territorial waters, the court had subject matter jurisdiction based on diverse party citizenship. *See* 28 U.S.C. § 1332(a). Likewise, Greenpeace USA does not dispute that the Outer Continental Shelf Lands Act ("OCSLA") gave the court jurisdiction to grant injunctive relief while Shell's vessels are attached to the seabed. *See* 43 U.S.C. § 1333(a)(1) (extending jurisdiction to the "seabed of the outer Continental Shelf and to . . . devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom").

Greenpeace USA is now solely appealing the district court's holding that under 28 U.S.C. § 1333, it had admiralty jurisdiction to enjoin conduct relating to vessels that were neither in U.S. territorial waters (where diversity jurisdiction extends) nor attached to the seabed (where OCSLA jurisdiction extends) – that is, vessels transiting through the U.S. EEZ.[6] We need not decide whether § 1333 provides jurisdiction over this particular stretch of an oil rig's journey because a court can exercise supplemental jurisdiction over the entire constitutional case. *See* 28 U.S.C. § 1367(a). The common nucleus of operative facts underlying Shell's claim for injunctive relief do not change when its vessels traverse an invisible line separating U.S. territorial waters from the waters of the U.S. EEZ, nor at the moment when its rigs detach from the seabed; this is therefore a single "case or

---

[6] *See Shell Offshore*, 2012 WL 1931537, at *2. The district court did not reach the question of whether its diversity jurisdiction extended to the EEZ. *Id.* at *5 n.42.

controversy" for the purposes of § 1367(a), and we conclude that the district court did not err in exercising jurisdiction over it.

## V.  DISCUSSION

### A.  **Whether Greenpeace USA is the Proper Entity to Enjoin**

A common thread in Greenpeace USA's various challenges is the argument that Greenpeace USA was not directly involved in any prior attacks on Shell vessels.  But Shell does not need to show past injury by Greenpeace USA to establish standing or to succeed on the merits of its preliminary injunction motion.  *See Diamontiney v. Borg*, 918 F.2d 793, 795 (9th Cir. 1990) ("[A]s commentators have noted, 'the injury need not have been inflicted when application [for an injunction] is made or be certain to occur; a strong threat of irreparable injury before trial is an adequate basis.'  Requiring a showing of actual injury would defeat the purpose of the preliminary injunction, which is to prevent an injury from occurring." (quoting 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2948 at 437–38 (1973)); *see also Restatement (Second) of Torts* § 933 cmt. (1)(b) ("[A] common method of proving a threat of a future tort is by proving a past tort under conditions that render its repetition or continuance probable.  It is not necessary, however, to prove past wrong.").

Regardless, Greenpeace USA does not dispute evidence that its own activists carried out the attack on Shell's *Harvey Explorer*.  And, although the record does not make clear which Greenpeace entity was directly responsible for multiple attacks on Cairn Energy vessels in the Arctic Ocean,

Greenpeace USA's executive director essentially took credit for it, describing the perpetrators as "our activists" and boasting that as a result of this direct action, "Cairn didn't find oil in 2010." Dkt. 56-19 (Exh. 1015 at 0005). Accordingly, the district court observed that although Shell had "not demonstrated that Greenpeace USA was directly involved in either the New Zealand or Finnish incidents" involving the *Noble Discoverer*, *Nordica*, and *Fennica*, other evidence showed that "stopping Shell and other oil companies from drilling in the Arctic is more likely than not one of the overall priority strategies of Greenpeace worldwide, as well as of Greenpeace USA." *Shell Offshore*, 864 F. Supp. 2d at 848. We see no clearly erroneous factual findings undergirding that conclusion.[7]

---

[7] The dissent argues that Greenpeace USA's legal status is relevant to this appeal because "a person (or corporation) can be held legally responsible only for his own actions, absent extraordinary circumstances." Dissent at 25. But this truism, which the dissent derives from cases involving decisions on the merits, *see First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba* (*Bancec*), 462 U.S. 611, 618 (1983) (appeal from dismissal of complaint on the merits); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 896 (1982) (appeal from judgment imposing damages liability), has no application to the present context of an appeal from a preliminary injunctive order. To determine whether Shell has demonstrated a likelihood of success on the merits, we must engage in a probabilistic inquiry, an inquiry that simply was not addressed in *Claiborne Hardware* and *Bancec*.

The questionable nature of the dissent's reliance on merits-based decisions is further heightened by the limitations inherent in interlocutory review. Unlike review of a decision on the merits, our preliminary injunction decisions are both narrow in scope and rendered without benefit of a fully developed factual record. *See Ctr. for Biological Diversity v. Salazar*, — F.3d —, 2013 WL 440727, at *4 (9th Cir. Feb. 4, 2013). These limitations explain why, as we have observed time and again, preliminary injunctions decisions are just that – "preliminary." *Id.* at *3;

## B.  Grant of Preliminary Injunction

A plaintiff who seeks a preliminary injunction must show:

> [1] that he is likely to succeed on the merits,
> [2] that he is likely to suffer irreparable harm
> in the absence of preliminary relief, [3] that
> the balance of equities tips in his favor, and
> [4] that an injunction is in the public interest.

*Winter*, 555 U.S. at 20.

The district court applied the correct legal standard and as our discussion below makes clear, it did so in a manner that was logical, plausible, and supported by the record. *See Hinkson*, 585 F.3d at 1251. As such, we conclude that the district court did not abuse its discretion in granting the preliminary injunction.

### 1.  Likelihood of Success on the Merits

Greenpeace USA challenges the district court's conclusion that Shell "demonstrated by a preponderance of the evidence that it is likely that Greenpeace USA would intend to commit tortious or illegal acts against Shell's Arctic drilling operations in the absence of preliminary injunctive relief." *Shell Offshore*, 864 F. Supp. 2d at 850. First,

---

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 499 F.3d 1108, 1114 (9th Cir. 2007) (quoting *S. Or. Barter Fair v. Jackson Cnty.*, 372 F.3d 1128, 1136 (9th Cir. 2004)). In light of the important distinctions between review of a preliminary injunction versus a merits-based review, we fail to see how *Claiborne Hardware* and *Bancec* can be instructive.

Greenpeace USA argues that the district court erred by impermissibly shifting the burden of proof to it. The court explained that it "accorded a minor degree of weight to the fact that there is no sworn statement in this record from Greenpeace USA indicating that the organization will not attempt tortious or unlawful acts this summer against Shell" and that, to the contrary, its executive director stated publicly in March 2012 that "'[w]hatever happens in court, Greenpeace will continue to oppose Shell's plans peacefully and vigorously.'" *Id.* at 849. The district court's "weighing" of Greenpeace USA's silence amounts to an observation that contrary evidence offered by Shell stood unrefuted. There is consequently no error here.

Second, Greenpeace USA argues that Shell failed to meet its burden. The record before the district court contained evidence that: (1) Greenpeace USA forcibly boarded and defaced a Shell vessel, the *Harvey Explorer*, as part of its campaign to "stop Shell" from drilling in the Arctic; (2) on two occasions, activists that Greenpeace USA termed "our activists" employed unlawful and tortious means to stop another energy company (Cairn) from finding oil in the Arctic; (3) Greenpeace USA conceded that it uses "direct action" – including unlawful conduct – as means to an end; (4) Greenpeace USA and the global Greenpeace organization share the goal of stopping Shell from drilling in the Arctic; and (5) Greenpeace activists from other nations have on multiple occasions employed unlawful or tortious means to stop Shell from drilling in the Arctic. On these facts, we cannot say that the district court abused its discretion in concluding that Shell met its burden. *See Hinkson*, 585 F.3d at 1251.

## 2. Likelihood of Irreparable Harm

The district court concluded that Shell demonstrated a likelihood of irreparable harm absent injunctive relief because "illegal or tortious efforts to board or interfere with [its] vessels would be likely to present unacceptable risks to human life, property and the environment." *Shell Offshore*, 864 F. Supp. 2d at 851 (internal quotation marks omitted). In support of these findings, the court considered evidence that actions of the sort undertaken by Greenpeace activists against Shell vessels in New Zealand, Finland, and Greenland pose risks to the safety of activists and vessel occupants alike. The court also found – and Greenpeace USA does not dispute – that "if Greenpeace USA successfully disrupted Shell's operation, calculating the amount of economic harm would be very difficult." *Id.*

Greenpeace USA offers nothing beyond conclusory statements and case summaries in support of its one-sentence argument that the "likelihood of future injury is speculative and cannot be based on matters that occurred in 1997,[8] or that involved entities that are not Greenpeace USA." The record provides ample support for the conclusion that Greenpeace USA has either undertaken directly, or embraced as its own, tactics that include forcible boarding of vessels at sea and the use of human beings as impediments to drilling operations. We find it too plain for debate that such tactics at minimum pose a serious risk of harm to human life, particularly if attempted in the extreme conditions of the Arctic Ocean, and that such harm could find no adequate remedy at law.

---

[8] We have searched the briefs in vain for clues as to which 1997 matters Greenpeace USA refers.

Accordingly, we find no abuse of discretion in the district court's conclusion. *See Hinkson*, 585 F.3d at 1251.

### 3. Balance of Equities

The district court concluded that "[b]y carefully tailoring preliminary injunctive relief to focus on illegal and tortious conduct, and minimizing any impact on Greenpeace USA's right to monitor the activities and peacefully protest against Shell within the confines of the law, . . . the balance of the equities remains solidly tipped in Shell's favor." *Shell Offshore*, 864 F. Supp. 2d at 853. Greenpeace USA argues that the court erred by failing to apply a standard that would require the balance of hardships to tip "sharply" in Shell's favor.

Under *Winter*, a preliminary injunction movant must show, inter alia, that "the balance of equities tips in his favor." 555 U.S. at 20. But if a plaintiff can only show that there are "serious questions going to the merits" – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the "balance of hardships tips *sharply* in the plaintiff's favor," and the other two *Winter* factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (emphasis added). But the serious questions approach is inapplicable in this case because, as explained above, Shell demonstrated, and the district court found, a likelihood of success on the merits.

We conclude that the district court did not err in finding that the balance of equities favors Shell. Shell has an interest in conducting legally authorized exploration of its Arctic leases without dangerous interference from Greenpeace USA.

Greenpeace USA has a countervailing First Amendment right to protest Shell's drilling activities, and the injunction imposes safety zones around Shell vessels that prevent Greenpeace USA from exercising its rights in close proximity to those vessels. Greenpeace USA argues that this is an undue speech restriction, prohibited under *Schenck v. Pro-Choice Network of W.N.Y.*, 519 U.S. 357 (1997). We disagree.

The safety zones do not prevent Greenpeace USA from communicating with its target audience because, as the district court observed, Greenpeace USA has no audience at sea. And although the injunction imposes a safety "bubble" around Shell's vessels, Greenpeace USA's reliance on *Schenck* and its discussion of bubble zones around abortion clinics is sorely misplaced. Speech is, of course, most protected in such quintessential public fora as the public sidewalks surrounding abortion clinics. *See id*. at 377. But the high seas are not a public forum, and the lessons of *Schenck* have little applicability there.

We conclude that, in light of the serious risk to human life and property posed by the conduct that the preliminary injunction enjoins, and given the narrow tailoring of the order, the district court did not abuse its discretion in finding that the scales of equity tip in Shell's favor.

### 4.  Public Interest

Finally, we must decide whether the district court abused its discretion in concluding that an injunction is in the public interest. Congress has recognized a public interest in the "expeditious and orderly development" of the OCS, *see Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546

n.11 (1987) (quoting 43 U.S.C. § 1332(3)), and Shell's Arctic OCS project is authorized by law.

Greenpeace USA argues that the district court failed to consider the public interest in environmental protection before issuing the injunction. After reminding the court of the *Deepwater Horizon* disaster, Greenpeace USA argues that there is an amplified public interest in "allow[ing] the public, including Greenpeace USA, to monitor [oil drilling] activities." Finally, Greenpeace USA argues that OCSLA recognizes an interest in "public participation and environmental protection" that is furthered by groups like itself.

The district court considered the public interest in having Greenpeace USA monitor Shell's Arctic drilling activities. In fact, the court agreed with Greenpeace USA's OCSLA argument, stating that "OCSLA recognizes the important role that environmental organizations such as Greenpeace USA may play in legal proceedings regarding the development of the Outer Continental Shelf." *Shell Offshore*, 864 F. Supp. 2d at 852. The court also acknowledged that the injunction could impact "Greenpeace USA's otherwise legal activities." *Id.* It responded by crafting a narrow injunctive order that prohibited only illegal and tortious conduct and by expressly inviting Greenpeace USA to

> seek to modify [the] order so as to permit Greenpeace to more closely monitor Shell's activities within the safety zones established by [the] order at such specific times, locations, and conditions that [the] court may order after each party has been accorded an opportunity to be heard on any such motion.

*Id.* at 856. We cannot say that this treatment of public interest factors constituted an abuse of discretion.

## CONCLUSION

The district court did not abuse its discretion in granting Shell's motion for a preliminary injunction, which is amply supported by the record. Consequently, the preliminary injunction order is **AFFIRMED.**

---

M. SMITH, Circuit Judge, concurring in part and dissenting in part:

I concur with Parts III and IV of the majority opinion that discuss justiciability and jurisdiction. I part ways with the majority, however, where it holds that Shell may impute the actions of other independent Greenpeace entities to Greenpeace USA in order to meet Shell's burden of proof.[1] Because I cannot support the imposition of legal sanctions on Greenpeace USA based, in significant part, on the conduct of others that Greenpeace USA does not control, I respectfully dissent.

## I.

The majority claims that Greenpeace USA was properly enjoined because the "evidence showed that stopping Shell

---

[1] As discussed more fully below, Greenpeace USA is one of sixteen independent voting members of Stichting Greenpeace Council (a.k.a., Greenpeace International), and is the only Greenpeace entity that is a party to this case.

and other oil companies from drilling in the Arctic is more likely than not one of the overall priority strategies of Greenpeace Worldwide, as well as of Greenpeace USA." (Maj. Op. at 16) (quoting *Shell Offshore Inc. v. Greenpeace, Inc.*, 864 F. Supp. 2d 839, 848 (D. Alaska 2012)). Of course, Greenpeace USA does not dispute that it seeks to stop Shell from drilling in the Arctic. Rather, Greenpeace USA disputes that Shell has presented sufficient evidence to show that Greenpeace USA will likely use *illegal methods* to achieve its goal. Because Greenpeace USA is unquestionably entitled to lawfully protest Shell's drilling activities, the real issue in this case is whether Shell has sufficiently proved that Greenpeace USA is likely to take "imminent" unlawful action unless it is enjoined. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Relying heavily on evidence of previous unlawful encounters between "Greenpeace activists" and Shell, such as the boarding of the *Noble Discoverer* in New Zealand and the boarding of the *Nordica* and *Fennica* in Finland, the majority concludes that Shell has met its burden. The majority's reliance on these acts is troubling, however, because even the majority admits that Greenpeace USA played no part in these events.[2] In order to sufficiently link these activities to Greenpeace USA, the majority advances two theories, both of which are ill-conceived. First, the majority claims that "Shell does not need to show past injury *by Greenpeace USA*" to be entitled to legal relief. (Maj. Op. at 15) (emphasis added). Alternatively, the majority claims that because Greenpeace USA reported on the unlawful actions of other Greenpeace

---

[2] The record is clear that the *Noble Discoverer* was boarded by members of Greenpeace New Zealand, while the *Nordica* and *Fennica* were boarded by members of Greenpeace Nordic.

entities on its website, and made reference to the members of such Greenpeace groups as "our activists," Greenpeace USA "endorsed" those actions, thereby permitting us to hold Greenpeace USA responsible for the underlying conduct in this litigation. (Maj. Op. at 5). For the reasons discussed below, I disagree with both propositions.

## A. The Separate Legal Status of Greenpeace USA Is Relevant to This Appeal

It is axiomatic that a plaintiff must sue the proper party in order to obtain relief. *See, e.g.*, *Krupski v. Costa Crociere S.p.A.*, 130 S. Ct. 2485, 2494 (2010) ("[M]aking a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity.").[3] It is similarly well recognized that a person (or corporation) can be held legally responsible only for his own actions, absent extraordinary circumstances. *See, e.g.*, *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982) ("Civil liability may not be imposed merely because an individual belonged to a group, some members of which committed acts of violence."); *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba* (*Bancec*), 462 U.S. 611, 625 (1983) ("Separate legal personality has been described as an almost indispensable aspect of the public corporation."). Certainly Shell understands these

---

[3] *Leonard v. Parry*, 219 F.3d 25, 29 (1st Cir. 2000) ("[E]ven the most liberal interpretation of 'mistake' cannot include a deliberate decision not to sue a party whose identity plaintiff knew from the outset.") (quotation omitted); *Springman v. AIG Mktg., Inc.*, 523 F.3d 685, 690 (7th Cir. 2008) ("the maintenance for years of a suit against a party known by the plaintiff to be the wrong one to sue was an abuse of legal process").

principles well—its own corporate disclosure statement takes up nearly a full page of its answering brief,[4] listing all of the subsidiaries and entities Shell admittedly relies on to limit its own liability.[5]  Yet when it comes to Greenpeace USA, what is sauce for the goose is apparently not sauce for the gander.

The majority claims that Greenpeace USA can be held to account for the actions of legally separate Greenpeace entities.  But well-established law, as well as basic fairness, dictates otherwise.  As the Supreme Court noted in a similar case:

> The taint of violence colored the conduct of some petitioners.  They, of course, may be

---

[4] Appellee Shell Offshore Inc. is a wholly owned subsidiary of SOI Finance Inc., which is a wholly owned subsidiary of Shell US E&P Investments LLC, which is a wholly owned subsidiary of Shell Oil Company, which, in turn, is a wholly owned subsidiary of Shell Petroleum Inc., which is a wholly owned subsidiary of Shell Petroleum N.V., which is a wholly owned subsidiary of Royal Dutch Shell plc.  (Appellee's Corporate Disclosure Statement).  Shell Offshore Inc. is itself the parent corporation of Enterprise Oil North America Inc., which in turn is the parent company of Shell Gulf of Mexico Inc., the other Shell appellee in this case.  *Id.*

[5] Consider the following exchange with Shell's counsel at oral argument:

The Court: I am very well aware that Shell has thousands of corporate and other entities and I have never heard a Shell representative basically say these are all worthless; we should treat them all as just one entity.

Mr. Leppo: And I'm not saying that your honor . . . I will never make that argument.

> held liable for the consequences of their violent deeds. The burden of demonstrating that it colored the entire collective effort, however, is not satisfied by evidence that violence occurred . . . Such a characterization must be supported by findings that adequately disclose the evidentiary basis for concluding that *specific parties* agreed to use unlawful means[.]

*Claiborne Hardware Co.*, 458 U.S. at 933 (emphasis added).

Applying these principles to the case before us, Greenpeace USA should only be legally sanctioned for the actions of other independent entities on a sufficient showing that Greenpeace USA significantly coordinated with, encouraged, or controlled the actions of those groups. *See, e.g.*, *id.* at 932–34 (the fact that certain activists engaged in unlawful conduct cannot be attributed to other protest organizers unless it could be shown that the latter had personally committed or authorized the unlawful acts); *Bancec*, 462 U.S. at 626–29 (explaining that "limited liability is the rule, not the exception," and thus one corporate entity may only be held liable for the actions of another "where a corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created.").

The record here, however, does not demonstrate such pervasive control. Instead, the record indicates that Greenpeace USA functions as an operationally independent member of Stichting Greenpeace Council (a.k.a., Greenpeace International), the Amsterdam-based "parent" entity that licenses the Greenpeace name to groups like Greenpeace USA. Together with the other fifteen voting members of

Greenpeace International, Greenpeace USA helps set Greenpeace's worldwide campaign priorities, such as preventing oil drilling in the Arctic, or logging in the Amazon. But when it comes to the methods and tactics used to advance those priorities, the record makes clear that each Greenpeace licensee is autonomous, and free to choose the tactics most likely to resonate with its local constituency. Thus, while Greenpeace New Zealand and Greenpeace Nordic may seek to advance the global "stop Shell" campaign through the unlawful boarding of Shell vessels, Greenpeace USA may choose more benign tactics, like the letter-writing campaign Greenpeace USA admits it coordinated through its website.

Understood in its correct factual context, it is legally improper to impute the independent tactical choices of other Greenpeace licensees to Greenpeace USA in this litigation. Yet under the majority's newly announced rule, Greenpeace USA's separate legal status has no bearing on our decision. Of course, as previously noted, courts have consistently held just the opposite, and found that a party's *individual* culpability is a key factor in fashioning an appropriate legal remedy. *See, e.g.*, *Claiborne Hardware Co.*, 458 U.S. at 932–34.[6] The majority does not adequately explain why this case should be decided any differently, and absent such justification, I cannot endorse its permissive and pernicious

---

[6] *Scales v. United States*, 367 U.S. 203, 228–30 (1961); *Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232, 244 (1957); *Anderson v. Abbott*, 321 U.S. 349, 357–62 (1944); *Louisiana-Pacific Corp. v. ASARCO, Inc.*, 5 F.3d 431, 433–34 (9th Cir. 1993).

new rule.[7]  Without sufficient proof of what Greenpeace USA *itself* has done to threaten Shell's Arctic drilling operations, I would not grant a preliminary injunction.

## B. Mere Endorsement of Criminal Conduct Cannot Support an Injunction

In addition to improperly relying on the direct evidence of illegal acts committed by non-party Greenpeace entities, the majority also relies on Greenpeace USA's "endorsement" of such acts to support its conclusion that Greenpeace USA was properly enjoined here.  Put simply, the majority implies that Greenpeace USA can be enjoined, at least in part, because Greenpeace USA wrote favorably about the unlawful activities of groups like Greenpeace New Zealand, and described those groups' activists as "our activists."  Again, I disagree.

My first ground for disagreement is factual.  Although Shell tries its best to paint Greenpeace USA's statements as imminent threats, they are clearly no such thing.  That Greenpeace USA officially referred to those members of Greenpeace New Zealand who unlawfully boarded the *Noble Discoverer* as "our brave activists," and described the incident as "only the first chapter in what will undoubtedly be an epic battle," is unremarkable.  These statements say nothing about Greenpeace USA's *own* planned involvement

---

[7] Contrary to the majority's assertion in its own footnote seven, there is no justification for distinguishing between types of requested relief when considering whether a plaintiff has adequately sued the proper party.  To obtain *any* legal relief, a plaintiff must sue the correct entity.  Any other rule is simply nonsensical and contrary to long-established precedent. *See, e.g.*, *Bancec*, 462 U.S. at 626–29.

in any "epic battle," let alone shed light on Greenpeace USA's contemplated "battle" tactics.  Rather, Greenpeace USA's statements are fully consistent with its claim that it plans to protest Shell's Arctic drilling using only legal methods.[8]

More importantly, however, the majority's "endorsement" test is legally ill-advised, because it is likely to have an unintended chilling effect on otherwise protected speech.  No party to these proceedings claims that Greenpeace USA's blog posts fall outside the protections of the First Amendment.  *See Brandenburg v. Ohio*, 395 U.S. 444, 447–48 (1969) ("advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action" is protected under the Constitution); *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1072 (9th Cir. 2002) (en banc) ("If ACLA had merely *endorsed* or encouraged the violent actions of others, its speech would be protected.") (emphasis added).  Praising civil disobedience and promising further protest in no way rises to the level of incitement or a true threat.  *See id.* at 1089 (Kozinski, J. dissenting) ("The difference between a true threat and protected expression is this: A true threat warns of violence or other harm that the speaker *controls*.") (emphasis added).  Yet by premising the grant of a preliminary injunction, at least in part, on Greenpeace USA's clearly protected political speech, the majority indirectly penalizes Greenpeace USA for

---

[8] Contrary to what the district court found, Greenpeace USA denied that it intended to illegally interfere with Shell's activities.  Greenpeace USA's sworn denial in its verified answer was all that was necessary, since Shell has the burden of proof in this case.  *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011).

behavior that cannot be punished directly. Chief Judge Kozinski, now in the majority, stated the issue well in dissent: "Like *Claiborne Hardware*, this case involves a concerted effort by a variety of groups and individuals in pursuit of a common political cause. Some of the activities were lawful, others were not. In both cases, there was evidence that the various players communicated with each other and, at times, engaged in concerted action. The Supreme Court, however, held that mere association with groups or individuals who pursue unlawful conduct is an insufficient basis for the imposition of liability, unless it is shown that the defendants actually participated in or authorized the illegal conduct." *Id.* at 1095.

Because the record here does not show that Greenpeace USA actually participated in or authorized much of the illegal conduct relied on by the majority, I respectfully dissent.