**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JEFFREY SHORT; TRINA T.R. HETER; SACRAMENTO VALLEY LINCOLN CLUB,<br><br>    *Plaintiffs-Appellants*,<br><br>v.<br><br>EDMUND G. BROWN, JR.; ALEX PADILLA, in his official capacity as Secretary of State of California; JILL LAVINE, in her official capacity as Registrar of Voters for the County of Sacramento; REBECCA MARTINEZ, in her official capacity as Registrar of Voters for the County of Madera; GREGORY J. DIAZ, in his official capacity as Registrar of Voters for the County of Nevada,<br><br>    *Defendants-Appellees.* | No. 18-15775<br><br>D.C. No.<br>2:18-cv-00421-TLN-KJN<br><br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted June 8, 2018
Pasadena, California

Filed June 22, 2018

Before:  Kermit V. Lipez,[*] Richard C. Tallman,
and John B. Owens, Circuit Judges.

Opinion by Judge Owens

**SUMMARY**[**]

**Voting Law / Preliminary Injunction**

The panel affirmed the district court's denial of plaintiffs' request for an order preliminarily enjoining the California Voter's Choice Act ("VCA").

California decided to adopt an all-mailed ballot election system, and enacted the VCA.  The VCA's county-by-county structure permits voters in some counties to receive a ballot by mail automatically, while requiring voters in other counties to register to receive a ballot by mail.  Plaintiffs alleged that the VCA violated the Fourteenth Amendment's Equal Protection Clause by restricting the fundamental right to vote on the basis of county of residence without sufficient justification; and sought a preliminary injunction against enforcement of the VCA.

The panel held that the district court properly denied the request for a preliminary injunction.  The panel held that the case did not raise "serious questions" under the Supreme

[*] The Honorable Kermit V. Lipez, United States Circuit Judge for the First Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Court's *Anderson/Burdick* test for constitutional challenges to state election laws, which provided that strict scrutiny applied only where the burden on the fundamental right to vote was severe. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992). The panel held that the VCA did not burden anyone's right to vote, but instead made it easier for some voters to cast their ballots by mail. The panel further held that to the extent that having to register to receive a mailed ballot could be viewed as a burden, it was an extremely small one that did not demand serious constitutional scrutiny. The panel also held that given the slight burden for voters outside the all-mailed ballot election system counties, California's general interest in increasing voter turnout and specific interest in incremental election-system experimentation adequately justified the VCA's geographic distinction.

The panel held that even if the merits question were close, the district court did not abuse its discretion in weighing all four of the preliminary injunction factors in *Winters v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## COUNSEL

Jason Brett Torchinsky (argued), Holtzman Vogel Josefiak Torchinsky PLLC, Warrenton, Virginia; Brian Hildreth, Bell McAndrews and Hiltachk, Sacramento, California; for Plaintiffs-Appellants.

Benjamin Matthew Glickman (argued), Deputy Attorney General; Mark R. Beckington, Supervising Deputy Attorney General; Thomas S. Patterson, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Sacramento, California; for Defendants-Appellees.

## OPINION

OWENS, Circuit Judge:

Jeffrey Short, Trina T.R. Heter, and the Sacramento Valley Lincoln Club ("appellants") appeal from the district court's denial of their request for an order preliminarily enjoining the California Voter's Choice Act, S.B. 450, 2015–2016 Reg. Sess. (Cal. 2016) ("VCA"). We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm.[1]

---

[1] The district court "assume[d] for purposes of [its] Order that the [Sacramento Valley Lincoln] Club *does not have standing*." Neither party addresses this issue on appeal, and we need not reach it in the posture of an appeal from the denial of a preliminary injunction. *Cf. Am. Motorcyclist Ass'n v. Watt*, 714 F.2d 962, 965 (9th Cir. 1983).

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A. Voter Turnout and the VCA

In 2014, California voters made a poor showing at the polls. Turnout was historically low: only 25% of registered voters participated in the June 2014 primary, and only 42% in the November 2014 general election.[2] To increase voluntary participation in the democratic process—a right that people around the world are willing to die for—California enacted the VCA.

To solve the problem of California voters "mailing in" recent elections, California decided to adopt an all-mailed ballot election system. Under this system, which is modeled after Colorado's successful election system,[3] a ballot is automatically mailed to every registered voter twenty-nine days before the election date. Cal. Elec. Code § 4005(a)(8)(A). A voter may cast a completed ballot in one of three ways: by (1) mailing it in; (2) depositing the ballot at a designated "ballot dropoff location" (a large locked mailbox); or (3) turning in the ballot at a "vote center" (a voting-resource hub that replaces traditional polling places). *Id*. at § 4005(a)(1)–(2). The voter may cast his ballot by mail or at a dropoff location as soon as he receives it.

Rather than require all fifty-eight of California's counties to implement this new voting system immediately,

---

[2] Cal. S. Comm. on Elections & Constitutional Amendments, Analysis of S.B. No. 450, at 6 (Cal. Aug. 18, 2016) ("Senate Elections Committee Report").

[3] Senate Elections Committee Report at 7.

the VCA authorizes fourteen counties to opt in to the all-mailed procedure on or after January 1, 2018.**[4]**   *Id.* at § 4005(a).   All other counties may opt in to the all-mailed system on or after January 1, 2020.**[5]**   *Id.*   Within six months of each election conducted under the all-mailed system, the California Secretary of State must submit to the legislature a detailed report assessing turnout and other metrics of success.  *Id.* at § 4005(g).   The parties agree that in any given county, election participation will be higher under the all-mailed ballot election system than it would be under the traditional polling-place system.

Even before the VCA's enactment, California voters could opt to vote by mail on an individual basis.**[6]**   *Id.* at

---

**[4]** The counties are Calaveras, Inyo, Madera, Napa, Nevada, Orange, Sacramento, San Luis Obispo, San Mateo, Santa Clara, Shasta, Sierra, Sutter, and Tuolumne. Cal. Elec. Code § 4005(a). Neither the legislative history nor the record identifies why these fourteen counties were selected. So far, five counties—Madera, Napa, Nevada, Sacramento, and San Mateo—have opted in.

**[5]** For Los Angeles County—the most populous in the state—the VCA establishes an additional "vote center election" option, essentially a hybrid between the traditional polling-place system and the new all-mailed system. Los Angeles County may adopt that hybrid system on or after January 1, 2020, for up to four years. After four years of using the hybrid system, Los Angeles County must either adopt an all-mailed ballot election system or revert to the traditional polling-place system. Cal. Elec. Code § 4007.

**[6]** A voter wishing to do so could: (1) submit a written application for a vote-by-mail ballot on or before the seventh day before election day; (2) submit an electronic request through the county election official's website; (3) request a vote-by-mail ballot by telephone; or (4) request to be a permanent vote-by-mail voter (and thus to be

§ 3003.  Under the VCA, this option remains available to individual voters whose home county has not opted in to the all-mailed ballot election system.[7]

B.  This Lawsuit

At the end of February 2018, the appellants filed this lawsuit, alleging that the VCA violated the Fourteenth Amendment's Equal Protection Clause by restricting the fundamental right to vote on the basis of county of residence, without sufficient justification.  The appellants also sought a preliminary injunction against enforcement of the VCA.

The district court rejected the request for a preliminary injunction.  While the district court thought that the appellants had "raised serious questions on the merits," it concluded that they had not met their burden of showing that a preliminary injunction would be in the public interest.  This timely appeal followed, and we granted the appellants' unopposed motion to expedite it.

II.  DISCUSSION

A.  Standard of Review

Plaintiffs seeking a preliminary injunction must establish that:  (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their

---

automatically mailed a ballot for every election).  Cal. Elec. Code §§ 3001, 3007.7, 3007.8, 3201, 3206.

[7] Under the VCA, all vote-by-mail voters may cast their ballot by mail or in person at any polling place, vote center, or dropoff location in the state.  Cal. Elec. Code § 3017(a).

favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit weighs these factors on a sliding scale, such that where there are only "serious questions going to the merits"—that is, less than a "likelihood of success" on the merits—a preliminary injunction may still issue so long as "the balance of hardships tips *sharply* in the plaintiff's favor" and the other two factors are satisfied. *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

When the preliminary relief sought would interfere with state voting procedures shortly before an election, a court considering such relief must weigh, "in addition to the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases and its own institutional procedures." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam). Of course, where a state election law raises constitutional concerns, federal courts can and must review it. *Baker v. Carr*, 369 U.S. 186, 199–200 (1962). But the Supreme Court has warned us many times to tread carefully where preliminary relief would disrupt a state voting system on the eve of an election. *See, e.g.*, *Purcell*, 549 U.S. at 4–6; *Williams v. Rhodes*, 393 U.S. 23, 35 (1968); *Reynolds v. Sims*, 377 U.S. 533, 585 (1964).

We review for abuse of discretion a district court's decision to deny a preliminary injunction, but we review de novo the conclusions of law underlying that decision. *Shell Offshore*, 709 F.3d at 1286. We review findings of fact for clear error. *Id.*

**B. The District Court Properly Denied the Request for a Preliminary Injunction**

The district court in this case believed that the appellants had raised "serious questions on the merits," but it denied the preliminary injunction based on the fourth *Winter* factor. The district court's balancing of the *Winter* factors was not an abuse of discretion. However, more fundamentally, we do not think that this case raises "serious questions" under the Supreme Court's *Anderson/Burdick* test for constitutional challenges to state election laws, and so we agree that preliminary relief is not warranted here.

### 1. *The* Anderson/Burdick *Framework*

No one disputes that the right to vote is fundamental. *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 667 (1966). But not all election laws impose constitutionally suspect burdens on that right. *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). And states retain broad authority to structure and regulate elections. *Sugarman v. Dougall*, 413 U.S. 634, 647 (1973). "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974). An election regulation "inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends. Nevertheless, the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Anderson*, 460 U.S. at 788.

Accordingly, a court faced with a constitutional challenge to a state election law "must first consider the character and magnitude of the asserted injury to the rights

. . . that the plaintiff seeks to vindicate." *Id*. at 789; *see also Burdick v. Takushi*, 504 U.S. 428, 434 (1992) ("[T]he rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights."). Next, it "must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule." *Anderson*, 460 U.S. at 789. Those interests must be "sufficiently weighty to justify the limitation," *Norman v. Reed*, 502 U.S. 279, 288–89 (1992) (citation omitted), and there must be a means-ends fit between the state's proffered justification and the rule employed, *Pub. Integrity All., Inc. v. City of Tucson*, 836 F.3d 1019, 1024 (9th Cir. 2016) (en banc). Under this framework, strict scrutiny applies only where the burden on the fundamental right to vote is severe. *Id*.

### 2.  Anderson/Burdick *In This Case*

The appellants argue that the VCA's county-by-county structure—permitting voters in some counties to receive a ballot by mail automatically, while requiring voters in other counties to register to receive a ballot by mail—inequitably "dilutes" votes in "disfavored" counties and therefore warrants strict scrutiny. But this attempt to sidestep more deferential review to reach strict scrutiny on the *Anderson/Burdick* framework fails. As discussed, the Constitution permits states to impose some burdens on voters through election regulations, and it requires strict scrutiny of those regulations only where the burden imposed is severe. *Id*.

The VCA does not burden anyone's right to vote. Instead, it makes it easier for some voters to cast their ballots by mail, something that California voters already can do. As for voters outside the counties that have opted in to the all-

mailed system, their access to the ballot is exactly the same as it was prior to the VCA's enactment. To the extent that having to register to receive a mailed ballot could be viewed as a burden, it is an extremely small one, and certainly not one that demands serious constitutional scrutiny.[8] *Compare Burdick*, 504 U.S. at 438–39 (concluding that ban on write-in voting "impose[d] only a limited burden" (citation omitted)), *and Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 203 (2008) (holding that photo identification requirement imposed "a limited burden" (citation omitted)), *with Harper*, 383 U.S. at 668–70 (invalidating poll tax as a severe burden), *and Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 183–84 (1979) (finding a severe burden where regulations effectively barred political party from ballot).

To show a severe burden, the appellants rely on *Obama for America v. Husted*, in which the Sixth Circuit affirmed an order enjoining an Ohio statute that shortened the early-voting period for the general population but not for military personnel. 697 F.3d 423, 436–37 (6th Cir. 2012). But in that case, the state effectively penalized one class while preserving the favorable status quo for another. Moreover, the plaintiffs "introduced extensive evidence that a significant number of Ohio voters will in fact be precluded from voting without the additional three days of in-person early voting." *Id*. at 431. Based on that evidence, the district court found "that because early voters have disproportionately lower incomes and less education than election day voters, and because all evening and weekend

---

[8] Indeed, by asking this court to enjoin the VCA's operation in the all-mailed ballot election system counties, the appellants seek to preserve the very status quo now enjoyed by voters in the so-called "disfavored" counties.

voting hours prior to the final weekend were eliminated by [Ohio law], thousands of voters who would have voted during those three days will not be able to exercise their right to cast a vote in person." *Id.* (citation and internal quotation marks omitted). The Sixth Circuit agreed this constituted a moderate burden on the right to vote. *Id.* at 433 ("The burden on non-military Ohio voters is not severe, but neither is it slight.").

The appellants, by contrast, have not even alleged—let alone introduced evidence to demonstrate—that the VCA will prevent anyone from voting. Nor have the appellants cited any authority explaining how a law that makes it easier to vote would violate the Constitution. Even assuming that a state could convert the status quo into a burden by facilitating the process for some but not all, the burden in this case is much less substantial than the moderate one alleged by the plaintiffs in *Obama for America*, and thus certainly not "severe" enough to trigger strict scrutiny on the *Anderson/Burdick* scale. *Cf. id.* at 429, 433.

Next, the appellants cite *Gray v. Sanders* and *Reynolds v. Sims* to argue that treating citizens differently based on their county of residence constitutes "vote dilution," a severe burden triggering strict scrutiny. But those cases stand for something narrower: that a state may not *allocate representation differently* based on a voter's county of residence.

In *Gray*, the Supreme Court invalidated Georgia's "county unit" vote-counting system, a sort of county-based electoral college that selected statewide officials using a majority of "county unit" votes. 372 U.S. 368, 370–72 (1963). These "county unit" votes were allocated to each county out of proportion to population, thereby "weight[ing] the rural vote more heavily than the urban vote and . . . some

small rural counties heavier than other larger rural counties." *Id*. at 379. This disproportionate weighting, the Court held, violated the core conception of political equality: "one person, one vote." *Id*. at 381; *see also Evenwel v. Abbott*, 136 S. Ct. 1120, 1130 (2016) (stating that the state election system in *Gray* "contravene[d] the principles of both voter *and* representational equality").

In *Reynolds*, the Court invalidated a state legislative apportionment scheme because it allocated state representatives by county instead of by population, thereby "diluting" the votes of citizens in more populous counties: "Their right to vote is simply not the same right to vote as that of those living in a favored part of the State. Two, five, or 10 of them must vote before the effect of their voting is equivalent to that of their favored neighbor." 377 U.S. at 563; *see also Whitcomb v. Chavis*, 403 U.S. 124, 141 (1971) (describing *Reynolds* as establishing that "apportionment schemes which give the same number of representatives to unequal numbers of constituents unconstitutionally dilute the value of the votes in the larger districts" (citation and internal quotation marks omitted)); *Moore v. Ogilvie*, 394 U.S. 814, 817–18 (1969) ("*Reynolds* . . . held that a State in an apportionment of state representatives and senators among districts and counties could not deprive voters in the more populous counties of their proportionate share of representatives and senators."); *Wesberry v. Sanders*, 376 U.S. 1, 7–8 (1964) (requiring that congressional districts be drawn with equal populations).

By contrast, the VCA does not allocate representation differently among voters, so its distinction along county lines does not trigger heightened scrutiny. Simply put, *Gray* and *Reynolds* are nothing like this case.

Perhaps the appellants are suggesting that the VCA's differential treatment of California counties reveals a *preference* for some counties over others, and that this preference constitutes unconstitutional discrimination. But this confuses two separate strands of equal protection doctrine: suspect classifications and fundamental rights. The first strand bars a state from codifying a preference for one class over another, but it prescribes heightened scrutiny only where the classification is drawn from a familiar list—race, gender, alienage, national origin. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). The second strand bars a state from burdening a fundamental right for some citizens but not for others. Absent some such burden, however, legislative distinctions merit no special scrutiny. *See McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 806–08 (1969).

County of residence is not a suspect classification warranting heightened scrutiny under the first strand. Importantly, the appellants do not argue that the VCA's distinction along county lines is a proxy for some other form of discrimination—that it is a racial or political gerrymander disguised as a geographic distinction. *Cf. Fortson v. Dorsey*, 379 U.S. 433, 439 (1965) (cautioning that the Equal Protection Clause would not tolerate a districting plan that "designedly or otherwise . . . operate[d] to minimize or cancel out the voting strength of racial or political elements of the voting population"). And as discussed, the appellants do not allege that the VCA severely burdens the right to vote for citizens either within or outside the fourteen listed counties. Accordingly, the VCA's geographic distinction does not warrant strict scrutiny.

### 3. *The VCA Survives Review*

Given that the burden is so slight for voters outside the all-mailed ballot election system counties, California's general interest in increasing voter turnout and specific interest in incremental election-system experimentation adequately justify the VCA's geographic distinction. *See Burdick*, 504 U.S. at 434, 439–40; *cf. McDonald*, 394 U.S. at 809 (observing that under rational basis review, "a legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind'" (quoting *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955))).  We have observed that our democratic federalism "permits states to serve 'as laboratories for experimentation to devise various solutions where the best solution is far from clear.'" *Pub. Integrity*, 836 F.3d at 1028 (quoting *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2673 (2015)).  By phasing in a new election system gradually, and by requiring reports on the new system's success, California is doing just that.

### 4. *Preliminary Relief Is Not Warranted*

In sum, the appellants' reading of the Supreme Court's voting cases would essentially bar a state from implementing any pilot program to increase voter turnout.  Under their theory, unless California foists a new system on all fifty-eight counties at once, it creates "unconstitutional vote-dilution" in counties that do not participate in the pilot plan.  Nothing in the Constitution, the Supreme Court's controlling precedent, or our case law suggests that we can micromanage a state's election process to this degree.  To the contrary, such an argument ignores the Supreme Court's repeated admonition that "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots

to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997); *Burdick*, 504 U.S. at 433; *Anderson*, 460 U.S. at 788. The appellants have not shown serious questions going to the merits of their constitutional claim.

It follows that denying the request for an injunction was not an abuse of discretion. And even if the merits question were close, the district court did not abuse its discretion in weighing all four *Winter* factors: California argues, citing sworn affidavits, that an injunction of the VCA would seriously disrupt the November 2018 general election due to the significant time and resources that would be required to reverse the extensive efforts already undertaken to implement the new election system in the five opted-in counties. For example, California asserts that Sacramento County would be forced to locate 600 polling places and 3,000 poll workers, and expend $8 million to procure the required equipment. California also maintains that changing the voting system between the primary and general elections would result in voter confusion and disenfranchisement. The appellants have entirely failed to refute this. They argue only that California has sufficient time between now and the November 2018 election to make the necessary changes. But they do not meaningfully dispute that these changes would be exceedingly difficult, and would "themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4–5. The district court concluded that the appellants had failed to justify such a disruptive injunction, *see id.* at 4, and we agree.

**AFFIRMED.**